Reed, P. J.,
delivered the opinion of the court.
There are several errors assigned. The case was brought up on a writ of erroi;. The verdict was rendered August 28, 1893. On September 1st a motion was filed to set aside the verdict and for a new trial. On September 9th the motion came on for argument, after which plaintiff’s attorneys moved to strike -the motion from the files because the July term had lapsed before the motion was filed. The motion was granted. On September 9th judgment nunc pro tunc was entered upon the verdict as of August 28th. On the same day defendant prayed an appeal, which was denied because the statutory time for praying an appeal had passed. If this practice were to prevail, in many instances the constitutional right to appeal would be taken away. By a well settled rule of law no appeal can be taken from a verdict before judgment. This ruling would practically require an appeal before a final judgment was entered. If the time in which an appeal could be taken should lapse while the matter was in abeyance and *149 under advisement, and the judgment should then be carried to an earlier date, common justice should require that the prayer for an appeal should be carried back and also be entered nunc pro tune within the limit of time ; otherwise the party would be required to take an appeal in advance of judgment or be deprived of the right of appeal. It may be urged that all' rights could be protected by coming up by writ of error, but the two are not equally available nor equally inexpensive, and the right of appeal cannot be abrogated by the court, and a party compelled to resort to a writ of error through the neglect of the court, and without fault of the party praying the appeal. It is apparent that the court either erred in entering judgment as of the lapsed term or in denying the appeal on the day judgment was entered.
A brief examination of the evidence is necessary to a proper understanding and solution of the case. The following facts appear to have been established and undisputed: That plaintiff went to work for defendant April 6th. On the 11th he “.blew in” and took charge of a new furnace (No. 7). That on the 13th the accident occurred by which some quantity of molten metal was thrown over him, and he received at least trifling injury. The extent of the injury is nowhere satisfactorily shown. His own statement of his injuries was as follows on direct examination :
“ The injury was inflicted three days afterwards. My hands were burnt all over the back and on the side. My hands and body were burnt. My clothes were burnt. The burns on my hands were between the fingers and on the back. I was burnt on my body down the breast and on the collar and on the legs. The burns were scattered. I was also burnt on the head and eyes. * * * I was burnt in the left eye,— you can see where it was burnt, if you examine it, — and in the face and neck. * * * I had on an overshirt, undershirt, overpants, underpants and drawers, the value of which was $12.00 or $15.00. I bought $2.00 or $3.00 worth of medicines. Before I left the place I lost seven or eight days’ time. I tried to work after I was hurt. My hands were both *150 wrapped up and very sore. I couldn’t sleep nights because, when I would go to sleep, they would fall down, and I ought to held them up to keep the blood from rushing up and injuring my hands. My hands kept hurting me, paining me, and I was confined to the house some time. Couldn’t get out to get work. This lasted about five or six days. I left the defendant ultimately. I still suffered from my hands— couldn’t work. I was detained from work four or five weeks. I have now scars on my hands, neck, body, head and legs in consequence of these injuries.”
.On cross-examination : “ I was burnt a little in the face, in my eye, too. My neck I suppose is my face. My face is burnt but slightly. The stuff couldn’t rain down on me without striking some part of ■ my face. I suppose if you would examine my face you would find a few little sears. I don’t know where. I was injured on April 13th. I think it was about 2 o’clock P. M. I went to work at 6 A. M. and quit at 6 p. M. The day after I was hurt I began working at 6, the usual hour. I worked for three days, I think, after I was hurt, and then quit for seven or eight days. I quit on account of the injury to my hands. They kept getting worse. After the end of seven days I went to work and worked several days, and then quit, because I couldn’t do the work they required with my hands in that condition. I was not discharged. I bought some medicine, — carbolic salve, — at a drug store. I bought several bottles of antiseptic. It was about two or three weeks after the accident that I bought the medicines. When I was hurt I showed my wounds to Dr. Lemon, and he dressed them; gave me some salve for them. He dressed all the wounds except those on the body. He dressed those on my hands. I mean by that he didn’t put the medicine on. He gave me a prescription, and told me where to get the medicine and how to fix it. The matte separator and the orifice were in plain sight all the time in front of the furnace. It could have been repaired easily in an hour. I couldn’t have done it unless they authorized me to do it.”
*151 M. W. lies, superintendent; of defendant, testified: “I know the plaintiff. I was on the ground when he was using the separator. I did not know of his injury till after this case was brought. I know exactly the day he ceased to work’ for the company. He came and talked to me twelve hours, after he left. He said Tom Drohan liad fired him, and he thought unjustly; that he was working on one of the furnaces, and he thought he was doing his duty. I told him I would investigate, but as long as Drohan was foreman, I, for the time, would have to sustain his action ; that I believed Drohan wouldn’t discharge him unless for good cause. He said nothing whatever about any hurt or injuries or anything of that kind, nor about having any clothes injured. I did not know of the iujury on the day it happened, nor until this suit was brought.”
Although he testified that he was not discharged and “ quit ultimately ” on account of his injuries, it is established beyond controversy by the foreman and several others that he continued at work until he was discharged the last of the month of April, and, as shown above, complained to the superintendent of his discharge by the foreman.
Dr. L. E. Lemon testified: “ When I first knew the plaintiff he was employed by The Omaha & Grant Smelting and Refining Co., and frequently consulted me for sickness, slight injuries, slight burns, etc.; and on several occasions I have made out insurance papers for him, for which he has recovered indemnity from insurance companies in which he was insured at the time he was at work. I have treated him for burns prior to April last. Usually burns on the hands or feet. I don’t remember the date in April, but some time after April 12th, and before May 1st, he consulted me at my office for a burn. As I remember it, the burns were on the hand and a burn on the back of the neck. The burn on the hand was, I should say, of the area of the size of a nickel. That on the neck was not quite so large. I do not recollect that he complained of other injuries. I prescribed for the burn; *152 wrote a prescription for ointment. I only remember his consulting me once for that burn.” «
That he received some slight injury is beyond question. That it was not of such character as to incapacitate him is clearly shown, and that he continued at work until discharged; also that his claim for damages for injuries, or that he had received injuries, was not known to the officers of the company until this suit was brought.
No suit could be maintained or damages recovered unless the fact of negligence upon the part of the company, as -the proximate eause of the injury, was established. If the appliances were defective, and the fact known to those in charge, and there was a refusal to make them safe, the injured employee could recover daipages; otherwise not. In this case the only evidence of improper constrüction and of danger from the matte separator came from the plaintiff. The officers and other employees testified to its efficiency and safety. It was also shown that the same devices had been employed for a long time previous, were continued after-wards without change, and that the plaintiff, after his alleged injury, continued to use them without protest or complaint until his discharge. He testified that two or three days before he was injured be complained to the superintendent of the misconstruction of the inner orifice, and the danger attending, and that a change was promised. Mr. Tucker, to whom the complaint was alleged to have been made, testified that he had no recollection of plaintiff calling attention to the matter, nor of promising to rectify it. It is obvious that neither plaintiff nor those in charge deemed the matter of any moment! as plaintiff continued work until discharged without further complaint, and no change was found necessary by the company. Walter, a furnace man, who was with him at the time of the alleged injury, testified that it was caused by the improper mixing of the clay used upon tiie “ dolly bar ” to stop the orifice; that it was too soft; that he called plaintiff’s attention to it immediately before the injury, but his suggestion was disregarded. He also testified that *153 the plaintiff continued to work “right along” until he, the witness, left.
It appears that upon the trial plaintiff was twice called to testify; that on both occasions he exhibited his hands and the scars upon them, and testified to their being the result of the in j uries for which suit was brought. Counsel then learned from Dr. Lemon that several times plaintiff had applied to and received compensation from The Travelers Insurance Company for previous injuries by burning. On cross-examination he was asked how many times he had previous to April 13th applied to The Travelers Insurance Company for losses for accidents from burns on the bach of his hands. Objected to, and objection sustained. Counsel then offered to show that witness had made several applications for damage of that kind, and had several payments for such damage, and the offer was rejected.
Counsel caused a subpoena to be issued for E. P. Long, with the books of the Insurance Company, to prove the following facts, as stated in an affidavit of Samuel Lesem, the general agent of the company :
First — That on July 13, 1886, defendant had been paid $10.00 for injury by burning of his left hand and wrist.
Second — September 9, 1886, had paid $55.00 for burning left hand.
Third — December 6, 1886, had paid $55.00 for burning back of left hand.
Fourth — -January 30, 1890, had paid $15.71 for burning back of right hand.
Fifth — May 26, 1890, $10.00 for burning left hand.
The court held the evidence incompetent and declined to wait until the witness arrived. The refusal was error. The fact of the payment and amounts paid could not be rebuttal ; but after having made pro'fert of his hands, and exhibited the scars, the fact that he had previously, four times, made proof of injury by burning of the same hand would ceitainly have rebutted the proof that the scars exhibited were the result of the last injury. It would'also have gone to the *154 character and credibility, and shown him to have been one of the most careless or unfortunate of men, or a fraud unworthy of credit. For either of these purposes the-evidence was admissible, and counsel should have been allowed its intro-, duction and reasonable time to produce the witness.
No. want of proper attention on the part of the company, nor negligence or want of proper appliances was established. The whole case rested upon the evidence of the plaintiff. Of its character and credibility nothing need be said, but it is apparent that the injuries received were comparatively trifling, and in view of his previous experience, and the evidence of the surgeon and others, might be regarded as incidental to the employment.
The verdict clearly appears to have been the result of bias or prejudice, and so unwarranted by the evidence, and so much in excess of the injury as testified to by the plaintiff himself, and so regardless of the instructions of the court, that-it should not have been the basis of a judgment. The facts and circumstances of the case are such as to take it out of the general rule that the court will not interfere with the finding of facts by a jury where the evidence is contradictory. It is clearly within the exception'so often stated in the supreme court and in this court. The court erred in refusing the motion to set aside the verdict and grant a new trial. For reasons above given, the judgment of the district court will be reversed, and the cause remanded for a new trial.

Reversed.